IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 27, 2007

## STATE OF TENNESSEE v. DAVID WAYNE WATKINS

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S48,374; S50,957     Phyllis H. Miller, Judge**

_____

**No. E2006-01425-CCA-R3-CD - Filed July 20, 2007**

_____

The defendant, David Wayne Watkins, pled guilty to the offenses of theft over $1000, felony reckless endangerment, and felony failure to appear. As a result, he received a total effective sentence of eight years to be served consecutively to a prior sentence of six years he was already serving. On appeal, the defendant argues that the trial court erred in denying alternative sentencing and ordering confinement. Finding no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which James Curwood Witt, Jr. and Robert W. Wedemeyer, JJ., joined.

Leslie S. Hale, Assistant Public Defender, Blountville, Tennessee, for the appellant, David Wayne Watkins.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Teresa Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On November 5, 2003, the defendant was charged with one count of theft over $1000 and one count of felony reckless endangerment. On September 14, 2005, the defendant was charged with felony failure to appear. The defendant pled guilty to each of these charges, agreeing to a total effective sentence of eight years as a Range II, multiple offender, but leaving the manner of service of his sentences to the discretion of the trial court.

At the plea acceptance hearing, the state recited the following factual basis underlying the defendant's guilty pleas:

[In] February 2002[,] the Bristol police department was called to Tri-City Auto Parts, a business located there in Bristol . . . . It was reported to them that Gale and Dale Proffit, a father and son who operated that business had hired [the defendant] to work for them in December and one day in December they had given [the defendant] the keys to unlock the gates to the business . . . . Later[,] they . . . found the keys back on the desk . . . returned to them by [the defendant]. About [the] same time they discovered that $1200.00 that had been locked in a drawer in a locked room at the office was missing . . . . The day the money was discovered missing [the defendant] didn't come to work; however[,] the next day he came in driving a different car, a fairly new . . . Camaro. . . . At that time they didn't report the theft because they weren't certain that [the defendant] having the keys and the [missing] money . . . were related. However a month or so later in February the Proffits took in a large amount of money . . . from . . . someone purchasing car parts . . . [with] cash. The[y] locked $1200.00 in the building, [and] again . . . the money was gone . . . . So when Mr. Proffit came in and told [the defendant] that they were concerned about the money being missing and questioned [the defendant] about it [,] he decided to quit. At that time Mr. Proffit said "I think you've got my keys," went out to the Blazer, which [the defendant] was now driving . . . and Mr. Proffit leans in the car and finds the set of keys that he believes match the keys to his business. There's a verbal confrontation between the two of them . . . . [Mr. Proffit] tried to put . . . the car out of gear to keep [the defendant] from leaving . . . . [The defendant] then said "If you don't call the police I'll give you your money back." There was some scuffle over the keys. Mr. Gale Proffit was looking through the glove box of the Blazer and found more keys that matched his business and also a folder with a good deal of papers and money in it . . . . Over the course of that scuffle, [the defendant] tried to drive off and Mr. Proffit was still in the car and he fell out of the car and had some scuff marks on . . . his hands . . . and the knee to his jeans was scuffed up a bit but he wasn't seriously injured. All that was reported to the police and the charges were brought and filed in General Sessions Court in Bristol and the case was set to be heard on June 25th, 2002 and [the defendant] failed to appear for that hearing and . . . in fact he was an absconder from supervised probation at that time, too. We have filed a notice alleging that he has sufficient prior convictions to make him possibly a Range III offender but reached this Range II plea as a compromise. [The defendant] has made restitution for the money taken . . . .

Following the entry of the defendant's guilty pleas, a sentencing hearing was held. At the hearing, the defendant's presentence report was entered into evidence. According to the presentence report, the defendant had a number of prior convictions for: being a habitual traffic offender, evading arrest, reckless driving, theft, felony failure to appear, felony theft, vandalism, driving under the influence, driving with a revoked license, driving without a license, second degree burglary, and petit larceny. The presentence report also indicated that the defendant had several probation violations. In particular, it was noted that the defendant violated a condition of his probation by his conduct in being a habitual traffic offender. The defendant was then placed on community corrections.

-2-

Thereafter, the defendant violated the conditions of his community corrections sentence by committing the current offenses to which he pled guilty. Accordingly, the defendant's community corrections sentence was revoked, and he was ordered to serve his six-year sentence in confinement.

The victim's statement in the presentence report indicated that the defendant made restitution. The victim also noted that he believed the defendant was not a violent person. The victim further noted that he did not object to probation for the defendant.

The defendant was the only witness at the sentencing hearing. The defendant's testimony indicated that he had stayed out of trouble since he had absconded from Bristol in 2002. The defendant lived in South Carolina from 2002 to 2005. While in South Carolina he worked as an auto mechanic and detailed cars. He moved to Florida in 2005. While in Florida, he worked for Gas Buggies doing similar work on cars. In June 2005, he was arrested in Florida and sent back to Tennessee where he was incarcerated. The defendant's employer at Gas Buggies wrote a letter indicating he would rehire the defendant should he return to Florida.

According to the defendant's testimony, he had recently remarried and had custody of his ten year old son. However, his sister was taking care of his son while he was incarcerated. He spoke with his son via telephone two or three times a week while in jail. The defendant voiced his intention to reunite with his wife and son if placed on probation and allowed to relocate. He noted that his wife was having trouble paying the bills and could not make it by herself. The defendant asserted that he had gotten his "life straightened out now." He had a home and a job lined up in Florida, and he would be able to pay his fines and court costs within a year if placed on probation.

The defendant testified that he was having a difficult time while incarcerated at the Whiteville Correctional Facility. He noted that his belongings had been stolen, and he had received death threats from other inmates. He also stated that he was suffering from health problems. The defendant said he had taken a religious study course in prison and wanted to do inpatient residential treatment through the Haven Lighthouse Program. He further noted that he wanted to help children with disabilities in Florida. He explained that he wanted to do something with his life to make up for his mistakes and help others avoid making the same mistakes he did. He also voiced his desire to go to Bible college and become a preacher.

At the conclusion of the hearing, the court found the following enhancement factors: that the defendant had a previous history of criminal convictions and criminal behavior; he had a previous history of noncompliance with the conditions of sentences involving release into the community; and he abused his employer's private trust. The court then gave some mitigating weight to the fact that the defendant's conduct did not threaten serious bodily injury, the defendant engaged in some self-rehabilitative efforts, and he made a voluntary confession of guilt. The court then denied alternative sentencing and ordered the defendant to serve his total effective sentence of eight years in confinement consecutively to the sentence the defendant was currently serving.

**ANALYSIS**

The defendant's sole issue on appeal is whether the trial court erred in denying alternative sentencing and imposing full confinement. Specifically, the defendant submits that the trial court failed to consider the evidence presented supporting his amenability to rehabilitation. The defendant argues that the court only considered certain enhancement and mitigating factors set forth under Tennessee Code Annotated sections 40-35-113 and 40-35-114 rather than the factors set forth in section 40-35-103.

When an accused challenges the length and manner of service of a sentence, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Tennessee Code Annotated section 40-35-103 provides guidance as to whether the trial court should grant alternative sentencing or sentence the defendant to total confinement. Sentences involving confinement should be based upon the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. . . .
>
> . . . .
>
> (5) The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed. . . .

Tenn. Code Ann. § 40-35-103(1), -(5). As a Range II, multiple offender, the defendant was not presumed to be a favorable candidate for alternative sentencing. *Id*. § 40-35-102(6). Therefore, the burden of establishing suitability for alternative sentencing rested with the defendant.

Upon review, we initially note that the trial court failed to articulate the appropriate factors set forth in Tennessee Code Annotated section 40-35-103 when denying alternative sentencing. Nonetheless, the record supports the court's decision to deny alternative sentencing. The record reflects that the defendant had an extensive history of criminal conduct. The record further reflects that efforts less restrictive than confinement had frequently failed as the defendant was given several opportunities at probation and violated the conditions of his probation many times. Accordingly, we affirm the trial court's denial of the defendant's request for alternative sentencing.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court.


_____
J.C. McLIN, JUDGE